**Adonay MELENDEZ, Petitioner–Appellant,**

v.

**Cheryl PLILER, Warden; Attorney General of the State of California, Respondents–Appellees.**

No. 01–55272.

United States Court of Appeals, Ninth Circuit.

Argued March 5, 2002.

Submitted March 11, 2002.

Filed April 24, 2002.

David H. Goodwin, Attorney at Law, Los Angeles, CA, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Steven E. Mer-

**1122**

cer, Deputy Attorney General, Los Angeles, CA, for the respondents-appellees.

Before WARDLAW and W. FLETCHER, Circuit Judges, and JEREMY FOGEL, District Judge.[1]

## OPINION

FOGEL, District Judge.

Adonay Melendez, a state prisoner, appealed his conviction on the ground that the admission of a co-defendant's partially redacted statement implicating him in a murder violated his Sixth Amendment right to confrontation. The California Court of Appeal determined that Melendez had not objected timely to admission of the statement at trial and consequently had waived his right to assert his Sixth Amendment claim on appeal. The California Supreme Court affirmed, and Melendez filed the instant federal habeas petition. The district court determined that the Sixth Amendment claim was procedurally defaulted. Melendez now contends that the district court erred because the state appellate court's conclusion that his Sixth Amendment claim was waived was not based on a "clear, consistently applied, and well-established" principle of state law. *Calderon v. U.S. Dist. Court*, 96 F.3d 1126, 1129 (9th Cir.1996), *cert. denied*, 520

U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997) (internal quotations and citations omitted). On the particular facts of this case, we agree. We therefore reverse and remand with instructions to consider the claim on the merits.

## BACKGROUND

Melendez was sentenced to consecutive terms of twenty-five years to life and fifteen years to life after being convicted of second degree murder and conspiracy to commit murder pursuant to Cal. Pen.Code §§ 187(a) and 182(a)(1). Melendez and his co-defendant Stanley Rodriguez ("Rodriguez") both were accused of killing a member of a rival gang. Each provided a tape-recorded statement to the police exculpating himself and implicating the other in the murder.

Although Melendez and Rodriguez initially were charged separately, the prosecution moved to consolidate the cases and represented to the trial judge that it could, without prejudice to its case, redact the recorded statements to avoid an *Aranda Bruton* problem.[2] Trial was scheduled to begin on October 5, 1995.[3] On October 3, the trial judge met with the prosecutor and both defense counsel to discuss various pre-trial matters, including the admissibility of the defendants' statements and whether the case should be tried by one jury or by dual juries. The trial judge indicated that trial by dual juries was not

---

1. The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

2. *People v. Aranda*, 63 Cal.2d 518, 47 Cal. Rptr. 353, 407 P.2d 265 (Cal.1965) (finding that admission of confession implicating co-defendant in joint trial resulted in miscarriage of justice notwithstanding instruction that confession was admissible only against confessing defendant); *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (finding that admission of confession

implicating co-defendant in joint trial constituted prejudicial error even under circumstances in which trial court gave clear jury instruction that confession could be used only against confessing defendant and must be disregarded with respect to co-defendant).

3. There are several discrepancies in the record as to the dates of the various colloquies discussed herein. Because the discrepancies are immaterial to our analysis, we have used the dates in the trial transcript.

practicable. The prosecutor then stated for the first time that if the case were tried by one jury, the statements could not be redacted without prejudice to the prosecution's case. Melendez's trial counsel pointed out that the prosecution had not raised this issue at the time the cases were consolidated or at any other time. The trial judge offered to sever the cases for trial, but counsel stated that she would object to further delay and that she was convinced that adequate redactions could be made.[4] When asked why he had raised the redaction issue so close to trial, the prosecutor explained that he had assumed that the case could be heard by dual juries in the event that the statements could not be redacted effectively.

The prosecutor then observed that in their recorded statements both Melendez and Rodriguez had referred to various individuals, including each other, by their gang monikers. He suggested that the statements could be redacted effectively as long as neither defendant was identified by his given name. Melendez's counsel agreed that she would not object to admission of Rodriguez's statement if all references to her client by name were eliminated, if no evidence were used to identify Melendez as "Little Largo," the gang moniker of one of the individuals Rodriguez placed at the murder scene, and if the prosecution did not "use [a] gang expert to show that these two [defendants] know each other and they are in the same gang, et cetera." The trial judge agreed to consider counsel's suggestions, review the recorded statements, and resolve the issue at a hearing the next day.

In fact, not one but several additional proceedings with respect to the statements ensued. On October 5, at a sidebar conference, Melendez's counsel objected to the

non-redaction from Rodriguez's statement of the words, "you guys" on the basis that these words tended to implicate Melendez in a conspiracy and as a gang member. On October 11, defense counsel informed the trial judge that she had not yet received a transcript of the redacted statements. Sometime between October 11 and October 17, counsel received redacted tapes and transcripts. On October 17, the prosecutor advised the trial judge that he had not received notice of any objections to the redacted statements and asked that defense counsel advise him if there were any. Apparently counsel did not assert any objections at this time.

On October 18, the tape of a portion of Rodriguez's statement was played to the jury. Before the tape was played, Melendez's counsel objected to the non-redaction of the phrases, "we all decided," "you guys," and a reference to Melendez's brother without using neutral pronouns on the basis that this material tended to implicate Melendez. Counsel explained that her agreement to the use of Rodriguez's redacted statement had been conditioned upon the removal of precisely this type of material. The trial judge inquired whether the prosecutor's alleged failure to redact the material in question "was something that was overlooked, or was this something agreed upon and not done?" The prosecutor answered that these particular objections had not been raised previously. The trial judge thereupon overruled the objections on the basis that the scope of the redactions had been agreed upon previously and that in any event the material was not prejudicial.

On October 19, before the jury heard another excerpt of Rodriguez's statement, Melendez's counsel again argued to the

---

4. The record indicates that Melendez did not wish to waive his statutory right to a speedy trial, and that because of a lack of available judges and courtroom facilities, a severance would have resulted in postponement of the trial for at least one of the defendants.

trial judge that her consent to the redacted tapes had been based upon express conditions and that in her opinion these conditions had not been met. She renewed her objection to the non-redaction of the words, "you guys" and the reference to Melendez's brother and objected for the first time to the non-redaction of a physical description of "Little Largo" that resembled closely a description of Melendez. The trial judge overruled these objections as untimely on the basis that counsel by this time had access to a transcript of Rodriguez's redacted statement for approximately a week. Counsel also objected to the testimony of the prosecution's gang expert, who had testified that a primary gang moniker and a moniker preceded by the adjective "little" could be used to describe two different people. She argued that prior to such testimony, the jury could have inferred that Rodriguez's references to "Largo" and "Little Largo" pertained to the same individual, and that the prosecution thus had exceeded the restrictions on the expert's testimony upon which she had conditioned her consent to the redactions. The trial judge overruled this objection without explanation.

## STANDARD OF REVIEW

We review *de novo* the district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition, *Alvarado v. Hill*, 252 F.3d 1066, 1068 (9th Cir.2001), and we review for clear error the district court's factual findings. *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir.2000) (en banc). Under the Antiterrorism and Effective Death Penalty Act of 1996, we may grant habeas relief to a person in state custody only if the decision "was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), or the claimed constitutional error "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## DISCUSSION

A federal court will not review questions of federal law decided by a state court if the decision also rests upon a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although a state procedural rule is sufficient to foreclose review of a federal question, an inquiry into the adequacy of such a rule to foreclose review "is itself a federal question." *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). To be "adequate," the state procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. U.S. Dist. Court*, 96 F.3d at 1129. A federal court "should not insist upon a petitioner, as a federal procedural prerequisite to obtaining federal relief, complying with a rule the state itself does not consistently enforce." *Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir.1994), *cert. denied*, 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995); *see also, Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994) (finding no procedural default because Oregon Supreme Court's practice of declining to consider claims not explicitly raised in petition not consistently enforced). Nor should the federal court enforce a bar grounded on a rule which is unclear or uncertain. *See Morales v. Calderon*, 85 F.3d 1387, 1390–92 (9th Cir.1996), *cert. denied*, 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996) (California rule that required petition to be filed "without substantial delay" or later if there was "good cause" for the delay too vague to bar federal habeas review); *see also, Martinez v. Klauser*, 266 F.3d 1091,

1093–94 (9th Cir.2001) (Idaho state court's dismissal of habeas petition as untimely not adequate basis to bar federal review where prior state authority does not support the state court's decision and later authority indicates that the decision may have been contrary to state law).

■ Under Section 353 of California's Evidence Code, also known as the "contemporaneous objection rule," evidence is admissible unless there is an objection, the grounds for the objection are clearly expressed, and the objection is made at the time the evidence is introduced.[5] California courts construe broadly the sufficiency of objections that preserve appellate review, focusing on whether the trial court had a reasonable opportunity to rule on the merits of the objection before the evidence was introduced. *See, e.g., People v. Scott,* 21 Cal.3d 284, 290, 145 Cal.Rptr. 876, 578 P.2d 123 (Cal.1978) ("In a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented."); *People v. Abbott,* 47 Cal.2d 362, 372–373, 303 P.2d 730 (1956) (permitting appellate review in circumstances in which the trial court considered and ruled on the issue as if an objection had been properly made).

■ The record in this case demonstrates that Melendez's trial counsel objected, both before and after Rodriguez's statement was played to the jury, to those portions of the statement she believed tended to implicate Melendez. It also is apparent that counsel agreed to the introduction of the redacted statement on certain conditions, including that no reference to Melendez would be made by any means, that the prosecution would not present evidence suggesting that Melendez was the person identified by the gang moniker, "Little Largo," and that the prosecution's gang expert would not offer testimony that reasonably might lead the jury to draw inferences implicating Melendez from Rodriguez's statement. As the trial unfolded, Melendez's counsel either objected or renewed her previous objections each time she perceived a violation of these conditions.

■ Not surprisingly, the parties devote a substantial portion of their briefing on the present appeal to arguing whether California appellate courts consistently apply the contemporaneous objection rule. The particular facts of this case, however, make it unnecessary for us to resolve this question categorically. We held more than twenty years ago that the rule is consistently applied when a party has failed to make *any* objection to the admission of evidence. *Garrison v. McCarthy,* 653 F.2d 374, 377 (9th Cir.1981). However, there are no California cases holding that the rule is applied consistently in situations in which an objection *is* made but the trial court in its discretion declines to consider it on the merits. The California Court of Appeal itself noted that the underlying issue as to whether Melendez's objections were timely and thus should have been considered by the trial court was a close question as a matter of state law.[6]

---

**5.** The text of the statute reads as follows:
A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:
(a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and

(b) The court which passes on the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice.

**6.** Respondent's claim that Melendez suffered no cognizable prejudice because he was offered and rejected a severance is without mer-

**1126**

While a state court's exposition of state law is entitled to great deference, the appellate opinion in this case does not support the conclusion that California law applicable to the circumstances presented here is so "clear, consistently applied, and well-established" as to erect a procedural bar to consideration of a federal constitutional claim. *See, e.g., People v. Livaditis,* 2 Cal.4th 759, 775 n. 3, 9 Cal.Rptr.2d 72, 831 P.2d 297 (Cal.1992) (finding that defendant satisfied the contemporaneous objection rule by making general objections that were overruled); *Hale v. Morgan,* 22 Cal.3d 388, 394, 149 Cal.Rptr. 375, 584 P.2d 512 (Cal.1978) (construing liberally party's efforts at trial to raise a federal due process challenge); *People v. Blanco,* 10 Cal.App.4th 1167, 1173, 13 Cal.Rptr.2d 176 (Cal.Ct.App.1992) (considering due process claim despite lack of proper objection at trial). Viewed as a whole, the trial record in this case reflects an evolving scenario in which defense counsel came to believe that the conditions upon which she had agreed to the use of Rodriguez's statement were not being met. While reasonable minds might differ as to whether counsel asserted her objections at the earliest possible time, there is no question her objections were made at a point when the trial judge realistically could have considered them.[7] More importantly for our purposes, counsel asserted her objections in a sufficiently complete and timely fashion that there is no "clear, consistently applied, and well-established" rule of state law that precludes federal review of the merits of these objections.

## CONCLUSION

For the reasons set forth herein, we conclude that the district court erred in its determination that Melendez's Sixth Amendment claim was procedurally defaulted. Accordingly, we REVERSE and REMAND with instructions to consider the claim on the merits.

---

it. Melendez was not required to choose between his right to confrontation and his right to a speedy trial.

7. Our reasoning does not apply to circumstances in which no objection is made at all, or in which an objection is so obviously late as to preclude the trial judge from giving it meaningful consideration.